IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 18, 2022 Session

## ESTATE OF BEULAH BLANKENSHIP, ET AL. V. BRADLEY HEALTHCARE AND REHABILITATION CENTER ET AL.

Appeal from the Circuit Court for Bradley County
No. V-20-292     J. Michael Sharp, Judge

_____

### No. E2021-00714-COA-R10-CV

_____

In this healthcare liability action, a decedent's estate and her son sued a nursing home and the county that owned the nursing home, alleging that the nursing home was negligent in the care of the decedent. The nursing home and the county filed a motion to dismiss the case for failure to comply with the certificate of good faith filing requirement in Tenn. Code Ann. § 29-26-122. The trial court denied the motion, finding that an exhibit attached to the complaint satisfied the certificate of good faith filing requirement. Because the exhibit did not contain all of the information required for a certificate of good faith, we reverse and remand.

**Tenn. R. App. P. 10 Appeal by Permission; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Whitney Goode Horak and Minton Philip Mayer, Memphis, Tennessee, for the appellants, Bradley Healthcare and Rehabilitation Center and Bradley County, Tennessee.

Marvin Bernard Berke and Ronald Jay Berke, Chattanooga, Tennessee, for the appellees, Estate of Beulah Blankenship and Timothy Blankenship.

## OPINION

FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, Beulah Blankenship ("Decedent") died while a resident of Bradley Healthcare and Rehabilitation Center, a nursing home owned by Bradley County, Tennessee (collectively, "Defendants"). Decedent's son, Timothy Blankenship, acting

individually and as the administrator of Decedent's estate (collectively, "the Estate"), initiated this lawsuit on June 16, 2020, alleging that Defendants' negligence caused the wrongful death of Decedent. The Estate claimed that Decedent's death was due to Defendants' failure "to comply with the standard of care for nursing homes" and "to adequately staff their facility with enough personnel to provide proper care" for Decedent.

Paragraph 11 of the complaint stated that a document attached to the complaint as Exhibit 7 satisfied the certificate of good faith requirement in Tenn. Code Ann. § 29-26-122. Exhibit 7 is a one-paragraph letter from Natalie Baker, a nurse practitioner consulted by the Estate, that provides:

> I have reviewed the medical issues regarding **BEULAH BLANKENSHIP** and I have determined that violations of the standards of care occurred during her residency at **BRADLEY HEALTHCARE & REHABILITATION CENTER**. This report is prepared for the purposes of confirming that I am competent under T.C.A. § 29-26-115 to express these opinions; and that I believe, based on the information reviewed concerning the care and treatment of **BEULAH BLANKENSHIP**, that there is a good faith basis to maintain an action consistent with the requirements of § 29-26-115.

Defendants filed an answer and a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), arguing that Exhibit 7 did not constitute a certificate of good faith because it did not include an opinion regarding whether Defendants' violation of a standard of care caused Decedent's death. The Estate filed a response contending that, under Tenn. Code Ann. § 29-26-122, it was not required to consult an expert about whether Defendants' deviation from a standard of care caused Decedent's death to certify that a good faith basis existed to maintain the lawsuit.

While the motion to dismiss was pending, the trial court permitted Defendants to depose Ms. Baker on the limited issue of causation. Ms. Baker testified that she reviewed Decedent's medical records for the sole purpose of assessing whether there were any deviations from the nursing standard of care; she was not asked to opine as to whether those deviations caused Decedent's death. Defendants attached Ms. Baker's deposition to its response to the Estate's reply to the motion to dismiss.

After hearing arguments on the motion, the trial court entered an order on March 10, 2021, denying the motion to dismiss based on its finding that Exhibit 7 satisfied the requirements of Tenn. Code Ann. § 29-26-122. The court then determined that, although Exhibit 7 satisfied the certificate of good faith requirement, the Estate could have a 30-day extension of time to file a certificate that "further clarif[ied] and/or enhance[d] any points that may need clarification." On March 7, 2021, the Estate filed an amended complaint

that included an entirely new Exhibit 7 that was entitled "Tennessee Code Annotated § 29-26-122 Good Faith Certificate."

Defendants sought an interlocutory appeal that this Court granted, limited to the following issue: whether the trial court erred in denying the motion to dismiss.

ANALYSIS

As a preliminary matter, we must determine the standard of review applicable to this case. Our Supreme Court has held that a motion to dismiss filed pursuant to Tenn. R. Civ. P. 12.02(6) is the proper method for challenging whether a plaintiff complied with the certificate of good faith requirement in Tenn. Code Ann. § 29-26-122. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). The *Myers* court explained that, "[i]n the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof." *Id.* However, if the defendant submits "affidavits or other proof" outside the motion to dismiss, and the court does not exclude those outside matters, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." TENN. R. CIV. P. 12.02(6); *see also Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 330 (Tenn. 2020). Without a doubt, Defendants presented matters outside the pleadings to the trial court by attaching Ms. Baker's deposition to their response to the Estate's reply to the motion to dismiss. Thus, we must determine whether the trial court excluded those outside matters.

"[T]he trial court need not *expressly* state that it has chosen to exclude" outside matters for them to be excluded. *Asbury v. Lagonia—Sherman, LLC*, No. W2001-01821-COA-R3-CV, 2002 WL 31306691, at *3 (Tenn. Ct. App. Oct. 15, 2002). They may be considered excluded if the court's order implies that such information was excluded. *Id.* For instance, in *Winchester v. Little*, 996 S.W.2d 818, 821 (Tenn. Ct. App. 2002), the defendant filed a motion to dismiss and presented matters outside the pleadings. The trial court granted the motion and "couch[ed its order] in terms of a dismissal," but it did not expressly state that it had excluded the outside matters. *Id.* On appeal, this Court concluded that the order was one for dismissal rather than summary judgment because the trial court stated that it based its decision on only "the pleadings and argument of Plaintiff and counsel for Defendant." *Id.*

By contrast, in *Asbury*, the trial court granted a motion to dismiss and did not expressly state that it excluded outside matters that were presented with the motion. 2002 WL 31306691, at *3-4. On appeal, we concluded that the trial court's order should be considered one for summary judgment because, unlike in *Winchester*, the trial court "d[id] not state which documents he relied upon in making his decision," meaning that "the circumstances d[id] not indicate clearly enough" that the trial court excluded the outside matters. *Id.* at *4.

In the case at bar, the trial court framed its denial of Defendants' motion in terms of a dismissal and did not expressly state that it had excluded Ms. Baker's deposition in making its decision. The court stated that it based its decision on the following documents: "the defendants' motion, as well as the defendants' memorandum of law, *and various responses to the plaintiff's response* and/or various responses." (Emphasis added). The emphasized language encompasses Ms. Baker's deposition because Defendants attached it to their response to the Estate's reply to the motion to dismiss. Without any further clarification from the trial court that it considered only the pleadings and not their attachments, the circumstances do not clearly indicate that the trial court excluded those outside matters. Consequently, the trial court's order was an order denying summary judgment.

I. Standard of Review.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other evidence that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*,

- 4 -

271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

A determination of whether summary judgment is appropriate in this case hinges on statutory interpretation. When construing statutes, our primary objective "is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute," *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007), "'without unduly restricting or expanding'" the coverage of the statute beyond its intended scope. *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). To achieve this objective, we look to the plain and ordinary meaning of the language in the statute. *Id.* We must construe the words used "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). Like decisions regarding summary judgment, "[c]onstruction of a statute is a question of law which the appellate courts review *de novo* without a presumption of correctness." *Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, at \*4 (Tenn. Ct. App. Aug. 31, 2012) (citing *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000)).

## II. Certificate of good faith requirement.

Any plaintiff filing a healthcare liability claim that requires expert testimony under Tenn. Code Ann. § 29-26-115 must file a certificate of good faith with his or her complaint; this requirement is mandatory, and a plaintiff must strictly comply with it. Tenn. Code Ann. § 29-26-122; *Myers*, 382 S.W.3d at 309-10; *see also Sirbaugh v. Vanderbilt Univ.*, 469 S.W.3d 46, 51 (Tenn. Ct. App. 2014). "One of the purposes of the certificate of good faith is to weed out frivolous lawsuits before any party incurs substantial litigation expenses." *Hinkle*, 2012 WL 3799215, at \*8 (citing *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 639 (E.D. Tenn. 2010). In other words, it indicates "that an expert has reviewed the claims and has certified that they are taken in good faith." *Id.* To accomplish this purpose, Tenn. Code Ann. § 29-26-122(a)(1) provides detailed instructions about what the certificate of good faith shall state:

> (1) The plaintiff or plaintiff's counsel has consulted[1] with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

---

[1] In *Hinkle*, the plaintiff did not file a certificate of good faith that was drafted by the plaintiff or the plaintiff's counsel, and it did not expressly state that the plaintiff or the plaintiff's counsel had consulted with a qualified expert. 2012 WL 3799215, at \*8. Instead, the plaintiff merely submitted an affidavit of the expert consulted. *Id.* This Court concluded that the affidavit still qualified as a certificate of good faith because the plaintiff filed it and it clearly established that the plaintiff had consulted with a qualified expert who determined there was a good faith basis to maintain the case. *Id.* at \*9. Thus, although neither the Estate nor its counsel drafted Exhibit 7, that fact, by itself, does not render the document non-compliant with the certificate of good faith filing requirement.

(A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

(B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115[.]

The parties' dispute in this case centers on whether Exhibit 7 complied with these instructions. Defendants contend it did not because it included only an expert's opinion that Defendants deviated from the applicable standard of care. Due to the absence of an expert's opinion that the deviation caused Decedent's death, Defendants assert, Exhibit 7 failed to confirm that a good faith basis existed to maintain the lawsuit. The Estate does not dispute that Ms. Baker considered only whether Defendants violated the applicable standard of care, but it argues Exhibit 7 still satisfies the certificate of good faith filing requirement. Essentially, the Estate's argument is that, to certify that a good faith basis exists, § 29-26-122 does not require a plaintiff to consult with an expert regarding all of the requirements in § 29-26-115.

The phrase "a good faith basis to maintain the action *consistent with the requirements of § 29-26-115*" is the linchpin of this issue. Tenn. Code Ann. § 29-26-122(a)(1)(B) (emphasis added). The requirements of Tenn. Code Ann. § 29-26-115 are, in pertinent part, as follows:

(a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) *As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.*

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for

the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

(Emphasis added).

Reading the two statutes together, it is clear that § 29-26-122(a)(1)(A) refers to the locality rule for expert witnesses described in § 29-26-115(b) and that § 29-26-122(a)(1)(B) refers to the essential elements for maintaining a healthcare liability action described in § 29-26-115(a). To maintain an action under § 29-26-115(a), a plaintiff must prove the recognized standard of care, that the defendant deviated from the standard of care, and that the plaintiff's injury was caused by the defendant's deviation from the standard of care. The General Assembly stressed the essentialness of the causation element for healthcare liability actions by adopting § 29-26-115(d): "injury alone does not cause a presumption of the defendant's negligence." Thus, for a certificate of good faith to certify that there is "a good faith basis to maintain the action consistent with the requirements of § 29-26-115," it must indicate that the plaintiff has consulted with at least one qualified expert who reviewed the claims and believes the defendant deviated from the applicable standard of care and that the deviation proximately caused the plaintiff's injury.

This interpretation comports with the purpose of the certificate of good faith—weeding out frivolous lawsuits. To interpret the statute as the Estate suggests (that a plaintiff is required only to consult with an expert about some of the requirements in § 115), would defeat that purpose by allowing a plaintiff to pursue a baseless lawsuit, *i.e.*, a case where a defendant violated a standard of care, but that deviation had no connection to the plaintiff's injuries.

We find support for our interpretation in *Hinkle v. Kindred Hospital*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, (Tenn. Ct. App. Aug. 31, 2012). As in this case, the plaintiff in *Hinkle* did not file with her complaint a document entitled "certificate of good faith." *Id.* at *8. Instead, she filed an affidavit of the doctor her attorney had consulted. *Id.* The doctor's affidavit stated that he was a licensed doctor practicing in the same specialty and locale involved in the case and was familiar with the medical device at issue. *Id.* The affidavit did not contain an express statement from the doctor that he believed there was a good faith basis to maintain the action, but it did contain a statement from him that he believed the use of the device under the circumstances of the case "was a deviation from the standard of care, and that as a result of that deviation, [plaintiff] suffered injuries which otherwise would not have occurred." *Id.* The trial court found that the doctor's affidavit "'complie[d] with the underlying concept of the good faith certificate'" and "deemed the lack of such a certificate to be harmless error at most." *Id.*

On appeal, the defendants contended that the trial court erred in not dismissing the case because the doctor's affidavit did not satisfy the requirement of filing a certificate of

good faith. *Id.* We concluded that, although the doctor's affidavit did not contain the magic words "good faith basis," it contained all of the information required for a certificate of good faith and then some:

> We note that all the information that is required by the certificate of good faith is included in Dr. Eze's affidavit. By testifying that he was licensed as a medical doctor in the State of Tennessee, and that he is in active practice in the specialty of internal medicine in Madison County, Tennessee, he has demonstrated that he is competent to testify in this case under § 29-26-115. By testifying that he is familiar with the relevant care and that he believes that [plaintiff's] injuries resulted from a deviation from that standard, he impliedly asserted the existence of a good faith basis to maintain a medical malpractice claim for those injuries. His affidavit also described in great detail the conduct that he believed deviated from the standard of care and how it caused [plaintiff's] injuries.

*Id.* at *9 (footnote omitted). The *Hinkle* court determined that the doctor's affidavit certified that there was a good faith basis to maintain the suit because the doctor believed both that the defendants deviated from the standard of care and that the deviation caused the plaintiff's injuries. In other words, it confirmed there was a good faith basis to maintain the lawsuit because the expert's opinion was based on all of the elements in § 29-26-115 rather than merely on one or two of them.

Turning to the facts of this case, we conclude that Exhibit 7 did not satisfy the filing of a certificate of good faith requirement because it does not include all of the required information. Exhibit 7, unlike the detailed affidavit in *Hinkle*, is a perfunctory letter containing only one paragraph that provides very little information. Ms. Baker stated that she was a qualified expert under § 115; the letter contains nothing indicating that she is qualified, however, because she makes no mention of where she is licensed, the locale where she practices, or what she practices. *See* Tenn. Code Ann. § 29-26-115(b). Furthermore, it is clear from the letter and her deposition testimony that she determined only "that violations of the standards of care occurred during [Decedent's] residency at [Defendants' facility]." She never states that she considered whether Decedent's injury was caused by Defendants' violations of those standards of care. Exhibit 7, therefore, does not confirm that there is a good faith basis to maintain the lawsuit "consistent with the requirements of § 29-26-115."[2] Tenn. Code Ann. § 29-26-122(a)(1)(B). As a result,

---

[2] The Estate correctly points out that, to certify a good faith basis exists in most healthcare liability cases, a plaintiff is not required to consult two experts—one to opine as to standard of care and one to opine as to causation. The certificate of good faith statute, however, contemplates that a plaintiff may need to consult more than one expert to certify that a good faith basis exists to maintain a lawsuit. *See* Tenn. Code Ann. § 29-26-122(a)(2)(B) ("The plaintiff or plaintiff's counsel has consulted with one (1) *or more experts* who have provided a signed written statement confirming . . . there is a good faith basis for maintaining the action . . . consistent with the requirements of § 29-26-115.") (emphasis added).

Exhibit 7 does not satisfy the certificate of good faith filing requirement.[3] It does not certify that a good faith basis existed to maintain the action based on all of the requirements in § 29-26-115(a), nor does it show that Ms. Baker was a qualified expert under § 29-26-115(b).

We recognize that, when a plaintiff files the typical certificate of good faith or the form provided by the Administrative Office of the Courts, he or she simply states that a qualified expert was consulted and provided a written statement confirming there is a good faith basis to maintain the lawsuit. Our holding here does not render those types of certificates of good faith non-compliant with the statute. This case differs from cases involving those types of certificates because the Estate filed the actual written statement from the expert consulted. We believe, that Exhibit 7 does not satisfy the written statement from an expert requirement in Tenn. Code Ann. § 29-26-122(a) and, therefore, cannot serve as a compliant certificate of good faith.

## III. Extension of time.

Due to the Estate's failure to comply with the certificate of good faith filing requirement, Defendants assert that the case should be dismissed pursuant to Tenn. Code Ann. § 29-26-122(a). Subsection (a) provides that, "[i]f the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a . . . demonstrated extraordinary cause." *Id.* Subsection (c) states that, a plaintiff's failure to file a certificate of good faith shall, upon motion, "make the action subject to dismissal with prejudice." *Id.*

The Estate does not contend that it demonstrated extraordinary cause for the case not to be dismissed with prejudice. Instead, the Estate contends that the case should not be dismissed because it filed a new Exhibit 7 that fully complied with the certificate of good faith requirement[4] when it filed the amended complaint thirty days after the hearing on the

---

[3] Defendants contend that Exhibit 7 failed to strictly comply with the content requirements of Tenn. Code Ann. § 29-26-122. We note that the Tennessee Supreme Court has not opined as to whether strict compliance or substantial compliance is necessary for the content requirements of Tenn. Code Ann. § 29-26-122. *See Myers*, 382 S.W.3d at 310 (stating that the statutory requirement of filing a certificate of good faith is "mandatory" and may not be satisfied by substantial compliance but not addressing the content requirements). In our view, Exhibit 7 is noncompliant with either standard.

[4] The new Exhibit 7 stated:

> Counsel for Plaintiff, Ronald J. Berke, of Berke, Berke & Berke, certifies that he has consulted with one or more experts, who are competent to express an opinion under Tennessee Code Annotated § 29-26-115, and this expert, or these, experts, have each provided a signed written statement confirming that, upon information and belief based upon the medical records of treatment, there is a good faith basis to maintain this cause of action consistent with the requirements of Tennessee Code Annotated § 29-26-101.

- 9 -

motion for summary judgment. Despite not being filed with the complaint, the Estate argues that the new Exhibit 7 satisfied the certificate of good faith filing requirement because the Estate motioned for an extension of time to file a certificate of good faith pursuant to Tenn. Code Ann. § 29-26-122(c), and the trial court granted the motion.[5] Defendants argue that the trial court should not have granted the motion because the court lacked a basis to permit the extension.

We review a trial court's decision regarding an extension of time to file a certificate of good faith under the abuse of discretion standard. *Brandon v. Williamson Med. Ctr.*, 343 S.W.3d 784, 789 (Tenn. Ct. App. 2010). A court abuses its discretion when it "applie[s] incorrect legal standards, reache[s] an illogical conclusion, base[s] its decision on a clearly erroneous assessment of the evidence, or employ[s] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

By adopting Tenn. Code Ann. § 29-26-122(c), the General Assembly created a get-out-of-jail-free card to allow plaintiffs, in limited circumstances, to escape the mandatory deadlines for the certificate of good faith filing requirement. If a plaintiff fails to file a certificate of good faith with the complaint (or files one that is not fully compliant with the statutory requirements),

> [t]he court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown.

Tenn. Code Ann. § 29-26-122(c); *Stovall v. UHS of Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345, at *11 (Tenn. Ct. App. Apr. 22, 2014), (holding that an extension may be granted in cases where the plaintiff filed a certificate of good faith but it is not fully compliant), *overruled on other grounds by Davis ex rel. Davis v. Ibach,* 465 S.W.3d 570 (Tenn. 2015). Therefore, an extension of time may be granted only if a healthcare provider failed to timely produce relevant medical records or if the plaintiff demonstrates "good cause." Tenn. Code Ann. § 29-26-122(c). What is good cause? The

---

There have been no prior violations of Tennessee Code Annotated § 29-26-101, *et seq.*, including § 29-26-122.

[5] Rule 15.01 of the Tennessee Rules of Civil Procedure allows a party to amend his or her pleadings "only by written consent of the adverse party or by leave of court" once a responsive pleading is served. The trial court permitted the Estate to file an amended complaint pursuant to this rule. However, Tenn. Code Ann. § 29-26-122(c) does not contemplate the filing of an amended pleading to cure a failure to file a certificate of good faith. The statute contemplates only the filing of a motion for an extension. Thus, the new Exhibit 7 does not satisfy the certificate of good faith requirement absent a properly granted motion for an extension.

term "good cause" means "[a] legally sufficient reason. [It] is often the burden placed on a litigant . . . to show why a request should be granted or an action excused." BLACK'S LAW DICTIONARY (11th ed. 2019). This Court has consistently held that mistakes in calendaring, secretarial shortcomings, and attorney oversight do not constitute good cause. *See G.F. Plunk Constr. Co., Inc. v. Barrett Props. Inc.*, 640 S.W.2d 215, 218 (Tenn.1982).

Here, the trial court granted the extension because it found that Exhibit 7 "could have, and possibly should have, gone further and/or into more detail." We agree with that finding, but it merely explains how Exhibit 7 failed to fully comply with the certificate of good faith filing requirement. It does not constitute a finding that the failure was justified. In fact, the record contains little to no evidence providing any justification for the Estate's failure to comply with the certificate filing requirement. The Estate contended at the summary judgment hearing that Defendants had not furnished any of Decedent's medical records. The trial court questioned the legitimacy of this argument, however, and found that Defendants provided all records to the authorized agent of the Estate per the Estate's instruction.[6] As for "good cause shown," the record contains no evidence that the Estate proffered any justification to support a finding of "good cause shown." Therefore, we conclude that the trial court abused its discretion in granting the motion for an extension of time to file a certificate of good faith. Because the new Exhibit 7 was not properly before the court, it does not provide a means by which to demonstrate the Estate's compliance with Tenn. Code Ann. § 29-26-122.

Based on the foregoing, we conclude that the trial court erred in not granting summary judgment to Defendants. As a result, Defendants' remaining issue is pretermitted.[7]

CONCLUSION

The judgment of the trial court is reversed, and the case is remanded to the trial court for entry of an order granting summary judgment to Defendants and dismissing the case with prejudice. Costs of this appeal are assessed against the appellees, Estate of Beulah Blankenship and Timothy Blankenship, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE

---

[6] Ms. Baker's testimony further contradicted the Estate's argument because she admitted that she received "a banker's box full of records" which allowed her to review all of Decedent's necessary medical records in making her standard of care determination.

[7] Defendants' last issue was whether the trial court erred in citing to *Smith v. Outen*, No. W2019-01226-COA-R3-CV, 2020 WL 6018757, (Tenn. Ct. App. Oct. 9, 2020) in its order because the Tennessee Supreme Court designated the *Smith* opinion as "Not for Citation."